**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANDREY SCOTT, | Civil No. 10-1231 (JBS) |
| Plaintiffs, |  |
|  | **OPINION** |
| v. |  |
| BURLINGTON COUNTY CORREC. FACILITY, et al., |  |
| Defendants. |  |

**APPEARANCES:**

    ANDREY SCOTT, #89793, Plaintiff Pro Se
    Burlington County Jail
    54 Grant Street
    Mt. Holly, NJ 08060

**SIMANDLE**, District Judge:

Andrey Scott, a prisoner incarcerated at Burlington County Jail, seeks to bring this action in forma pauperis pursuant to 28 U.S.C. § 1915. This Court will grant Plaintiff's application to proceed in forma pauperis and direct the Clerk to file the Complaint and Amended Complaint without prepayment of the filing fee. See 28 U.S.C. § 1915(a). Having reviewed Plaintiff's allegations, this Court will dismiss the federal claims raised in the Complaint and Amended Complaint, without prejudice to the filing of a second amended complaint, and decline to exercise supplemental jurisdiction over claims arising under state law.

## I.   BACKGROUND

Plaintiff brings this action against Burlington County Jail, inmate Lamar Nevius, and corrections officers Cox, Cauley, Neigrich, Ahmad, Walsh, McMillen, Heisler and John Doe.[1]  He asserts the following facts in the Complaint, which allegedly occurred while he was confined at the jail.  On February 12, 2010, inmate Lamar Nevius attacked Plaintiff with a razor for no reason while Plaintiff was eating dinner in the dining hall, cutting Plaintiff's face, ear and neck.  Plaintiff maintains that the incident was caught on tape and witnessed by several officers.  Plaintiff alleges that on February 18, 2010, CO Neigrich, who witnessed the attack, told Plaintiff that he should have had a shank when Nevius attacked him.  Plaintiff contends that "Burlington County is also responsible for not taking acts they should have like searches before and after we eat, plac[ing] themsel[ve]s on all perimeters of this chow hall and giv[ing] inmates this instrument which almost killed me."  (Docket Entry #1, p. 7.)

Plaintiff thereafter submitted an Amended Complaint.
(Docket Entry #3.)  He asserts the following facts:

> On 2-12-10 at 6:15 pm approx. E-Wing was called out for the mess hall.  As I arrive[d] to eat, I was attack[ed] by a fellow inmate "Lamar Nevius" which he use[d] a knife to cause me bodily harm by vividly stabbing me on

---

[1] Plaintiff executed the Complaint on February 20, 2010. The Clerk received it on March 9, 2010.

> the right side of my face and cutting my ear causing wanton pain.  And also cutting me across the throat, vividly trying to cause death towards my person.  As I was being attacked I look[ed] around for officers for assistance but there wasn't none until a few minutes later.  (See:  camera videotape).
>
> As inmate Lamar Nevius was attacking me v[ic]iously S/C.O. Ahmed, S/C.O. Neigrich, S/C.O. Welsh was in one group in the corner talking while Sgt. Cauley, S/C.O. McMillen, S/C.O. Heisler and John Doe's w[ere] in another set of group talking amongst themselves and not paying attention to their surrounding[s] while on duty in the mess "per regulation" as it took these officers several minutes to respond.  (See:  mess hall camera).
>
> On 1-12-10 at 6:15 pm approx. I was v[ic]iously attack[ed] and had severe injuries cause[d] by an attack that officers Ahmed, Neigrich, Walsh, McMillen, Heisler, Sgt. Cauley let go unnotice[d] for a few minutes which vividly violates rules and regulations.  These officers were reckless, careless and w[ere] not there to protect and serve.  (See:  mess hall camera tape).
>
> Sgt. Cauley and officers are suppose[d] to search inmates upon entering the mess hall like they do when exiting, which cause[d] me wanton pain.  These officers [were] "deliberate[ly] indifferen[t]" to my constitution[al] rights which they acted in a malicious way.  (See:  mess hall video camera).
>
> On 2-12-10 6:30 pm I was taken to medical and den[ied] proper treatment at that time.  No pictures w[ere] taken on 2-12-10 of my injuries or the next [day,] no special investigation department interview with me nor w[ere] any charges file[d] in my behalf by S.I.O. (internal affairs).

(Docket Entry #3, pp. 2-3.)

Plaintiff seeks damages of $12,500,000.00 for violation of his constitutional rights.

## II.   STANDARD FOR DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.  A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios."  Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).

The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> [In any civil action, t]he pleading standard
> . . . demands more than an unadorned
> ["]the-defendant-unlawfully-harmed-me["]
> accusation. [Twombly, 550 U.S.] at 555 . . .
> .  A pleading that offers "labels and
> conclusions" or "a formulaic recitation of
> the elements of a cause of action will not
> do." [Id.] at 555.  [Moreover,] the

>       plausibility standard . . . asks for more
>       than a sheer possibility that a defendant has
>       acted unlawfully.  Id. [Indeed, even w]here a
>       complaint pleads facts that are "merely
>       consistent with" a defendant's liability,
>       [the so-alleging complaint still] "stops
>       short of [showing] plausibility of
>       'entitlement to relief.'"  Id. at 557
>       (brackets omitted).  [A fortiori,] the tenet
>       that a court must accept as true all of the
>       allegations contained in a complaint is
>       inapplicable to legal conclusions [or to
>       t]hreadbare recitals of the elements of a
>       cause of action, supported by mere conclusory
>       statements [, i.e., by] legal conclusion[s]
>       couched as a factual allegation [e.g.,] the
>       plaintiffs' assertion of an unlawful
>       agreement [or] that [defendants] adopted a
>       policy "'because of,' not merely 'in spite
>       of,' its adverse effects upon an identifiable
>       group." . . . . [W]e do not reject these bald
>       allegations on the ground that they are
>       unrealistic or nonsensical. . . .  It is the
>       conclusory nature of [these] allegations . .
>       . that disentitles them to the presumption of
>       truth. . . . [Finally,] the question [of
>       sufficiency of] pleadings does not turn [on]
>       the discovery process.  Twombly, 550 U.S.] at
>       559 . . . . [The plaintiff] is not entitled
>       to discovery [where the complaint asserts
>       some wrongs] "generally," [i.e., as] a
>       conclusory allegation [since] Rule 8 does not
>       [allow] pleading the bare elements of [the]
>       cause of action [and] affix[ing] the label
>       "general allegation" [in hope of developing
>       actual facts through discovery].

Iqbal, 129 S. Ct. at 1949-54.

The Third Circuit observed that Iqbal hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] which was

---

[2] The Conley court held that a district court was permitted
(continued...)

applied to federal complaints before Twombly.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  To determine the sufficiency of a complaint under the pleading regime established by Iqbal and Twombly,

> a court must take three steps:  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Iqbal, 129 S. Ct. at 1947.  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 1950.  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id.

Santiago v. Warminster Township, ___ F. 3d ___, 2010 WL 5071779 at *4 (3d Cir. Dec. 14, 2010); see also Fowler, 578 F.3d at 210-11 ("a complaint must do *more than allege the plaintiff's entitlement to relief*.  A complaint has to "show" such an entitlement with its facts") (emphasis supplied).

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff,

---

²(...continued)
to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. at 45-46.

even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007). With these precepts in mind, the Court will determine whether any federal claim raised in the Complaint and Amended Complaint should be dismissed.

### III.  DISCUSSION

Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

A.  State Action

Plaintiff's § 1983 claim against inmate Nevius fails because Nevius was not acting under color of state law when he suddenly attacked Plaintiff.  "[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful." <u>American Manufacturers Mutual Ins. Co. v. Sullivan</u>, 526 U.S. 40, 50 (1999) (quoting <u>Shelley v. Kraemer</u>, 334 U.S. 1, 13 (1948)).  State action exists where the conduct allegedly causing the deprivation of a federal right is "fairly attributable to the State."  <u>Lugar v. Edmondson Oil Co., Inc.</u>, 457 U.S. 922, 937 (1982).  Determining state action involves a two-step approach.

> [T]he first question is whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority.  The second question is whether, under the facts of this case, respondents, who are private parties, may be appropriately characterized as "state actors."

<u>Lugar</u>, 457 U.S. at 939; <u>see also</u> <u>Sullivan</u>, 526 U.S. at 50.

In this case, Plaintiff seeks damages against a fellow inmate who suddenly attacked him.  Nothing asserted in the Complaint insinuates that Nevius was acting under color of state law during the attack.  Under these circumstances, the Complaint fails to state a § 1983 claim against Nevius.

<u>B. Unconstitutional Punishment</u>

Plaintiff's allegations concerning his safety implicate the Due Process Clause of the Fourteenth Amendment, since he is

presumably confined in the jail as a pretrial detainee. While "the due process rights of a [pretrial detainee] are at *least* as great as the Eighth Amendment protections available to a convicted prisoner," Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005) (citation omitted), the proper standard for examining such claims is the standard set forth in Bell v. Wolfish, 441 U.S. 520 (1979), i.e., whether the conditions of confinement amounted to punishment prior to an adjudication of guilt. As the Supreme Court explained,

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell v. Wolfish, 441 U.S. at 539 (footnote and citation omitted).

The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard, contains an objective component, as well as a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in Wilson v. Seiter, 501 U.S. 294 . . . (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed]

> with a sufficiently culpable state of mind[.]" Id. at 298 . . . .  The Supreme Court did not abandon this bipartite analysis in Bell, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

Stevenson, 495 F. 3d at 68.

In this case, Plaintiff asserts that, because the corrections officers on duty in the dining hall were talking rather than paying full attention to the inmates, Nevius was able to attack Plaintiff for several minutes before the officers responded, which resulted in injury to Plaintiff's face, neck, and ear.  In addition, Plaintiff asserts that officials could have prevented the attack by searching Nevius before he entered the dining hall.  The problem with Plaintiff's allegations is that, at worst, he only alleges that the officers were negligent in failing to pay attention to inmates or search inmates prior to dining hall entry, and negligence does not satisfy the constitutional standard.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of [unconstitutional] punishment"); Davidson v. Cannon, 474 U.S. 344 (1986) (prison official who "mistakenly believed that the situation was not particularly serious" did not

deprive inmate of a liberty interest); <u>Daniels v. Williams</u>, 474 U.S. 327 (1986) (due process is not implicated by a state official's negligent act causing injury to an inmate). The § 1983 claims against the officers for allegedly failing to protect Plaintiff will therefore be dismissed for failure to state a claim upon which relief may be granted.[3]

Plaintiff also asserts that he was taken to the medical unit after the attack and denied proper treatment. Specifically, he alleges that officials failed to immediately photograph his injuries, the special investigations department did not interview Plaintiff, and internal affairs did not bring charges against Nevius. Because none of these alleged deficiencies is of constitutional magnitude and Plaintiff does not allege factual support for his conclusion that he was denied proper treatment, the medical care claim will be dismissed for failure to state a claim upon which relief may be granted. However, because Plaintiff's allegations do not foreclose the possibility that an

---

[3] Plaintiff also the Burlington County Jail, which will be construed as at attempt to state a claim against the county. A local government entity may be responsible for constitutional violations of its employees under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury." <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 694 (1978). In this case, the failure to protect claim against the county will be dismissed because Plaintiff does not identify any policy or custom that allegedly caused violation of his constitutional rights.

11

official at the jail may have been deliberately indifferent to Plaintiff's serious medical needs, this Court will grant Plaintiff 30 days to file a second amended complaint stating a cognizable § 1983 claim of deliberate indifference to his serious medical needs.[4]

C. Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted).  Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3);

---

[4] The Third Circuit "has held that a detainee's due process rights to medical care must be at least as great as the Eighth Amendment protections available to convicted prisoners.  To demonstrate a constitutional violation, a detainee must show that a prison official was deliberately indifferent to a serious medical need." Adegbuji v. Green, 280 Fed. Appx. 144, 147 (3d Cir. 2008) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976); Simmons v. City of Philadelphia, 497 F. 2d 1042, 1067 (3d Cir. 1991); Brown v. Borough of Chambersburg, 903 F. 2d 274, 278 (3d Cir. 1990)).

<u>Growth Horizons, Inc. v. Delaware County, Pennsylvania</u>, 983 F.2d 1277, 1284-1285 (3d Cir. 1993).  In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'"  <u>Growth Horizons, Inc.</u>, 983 F.2d at 1284 (quoting <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966)).  Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims.  <u>United Mine Workers v. Gibbs</u>, 383 U.S. at 726; <u>Growth Horizons, Inc.</u>, 983 F.2d at 1284-1285.

In this case, since this Court is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u>, dismiss the federal claims raised in the Complaint and Amended Complaint without prejudice to the filing of a second amended complaint, and decline to exercise supplemental jurisdiction over claims arising under state law.


                                         **s/ Jerome B. Simandle**
                                         JEROME B. SIMANDLE,
                                         U.S. District Judge

Dated:     **January 7**  , 2011